Railroad *v.* Parks.

(*Jackson.* May 3d, 1888.)

1. CORPORATIONS. *Stock. Conditional subscriptions.*

*Conditional* subscriptions to the capital stock of corporations should not be encouraged; and therefore stipulations in such contracts will, when of doubtful import, be construed as independent covenants rather than as conditions.

2. SAME. *Same. Same. Case in judgment.*

Subscriptions to a railroad were payable, one-fourth when the road was finished to a certain county line, and remainder "in four equal installments of four months, *as the work progresses through the county, provided* the company establish a depot on said road" at a specified point in the county.

The road was completed to the county line, and *while the work progressed through the county* all the installments, except the last, fell due, and all were paid except the last two. The company, becoming insolvent, abandoned the work, in an unfinished state, before the last installment was due. The depot was not erected. To suits by assignees of these subscriptions, for the last two installments, the defense of failure of the company to perform conditions precedent was interposed.

*Held:*

1. That completion of the road to the county line is a *condition precedent* to the payment of the first or any subsequent installment.

2. That it is a *condition precedent* to the payment of any installment subsequent to the first, that work on the road should be *progressing within the county at the time it fell due.*

Consequently the last installment is not recoverable.

3. That the stipulation as to erection of depot is not a *condition,* but an *independent covenant,* breach of which would not defeat recovery of the installments, but should be compensated in damages.

Cases cited and approved: 8 Wheat, 217; 14 Bush, 755; 29 Mo., 218; 15 B. Monroe, 218; 24 Mich., 389; 40 Penn. St., 237; 15 Ohio St., 225.

Cited and distinguished: Railroad *v.* Jones, 2 Cold., 574; 80 N. Y., 219.

Railroad *v.* Parks.

3. STATUTE OF LIMITATIONS.  *Set-off.*

   Commencement of suit stops the running of the statute of limitations not only as to the original cause of action, but as to all matters of set-off available as a defense and properly presented in the case.

   Case cited and approved : Williams *v.* Lenoir, 8 Bax., 395.

   (See 85 Tenn., p. 582.)

FROM DYER.

Appeal in error from Circuit Court of Dyer County.  T. J. FLIPPIN, J.

LATTA & RICHARDSON for Railroad Co.

H. PARKS and M. M. NEIL for Parks.

LURTON, J.  These four suits at law against subscribers to the stock of the Paducah & Memphis Railroad Co. were tried by consent together; and, a jury being waived, the issues of law and fact were submitted to the Circuit Judge, who has filed his special findings of fact and law as part of the record.  There was a judgment in favor of each of the defendants, and an appeal by the plaintiffs.

The contract of subscription upon which the suit was brought was as follows:

"July 31st, 1872.—We, the subscribers, agree and bind ourselves, our heirs and legal representatives, to pay to the Paducah & Memphis Railroad Company the sums by us subscribed, to be stock in said

railroad company, upon the following terms and conditions, to wit: One-fourth to be paid when the road is completed to the north or south line of Dyer County; the remainder of the amount subscribed to be paid in four equal installments of four months, as the work progresses through the county: *Provided*, The company establish a depot on said road within fifteen hundred feet of G. B. Tinsley's corner store, supposed to be the center of Newbern. It is further provided that certificates of stock issue to said subscribers as to other stockholders in said company, upon the payment of their subscription."

The proof shows that there was a gap in the line of a road projected between Paducah, Ky., and Memphis, Tenn., each end of the road being in operation and owned by different companies. The new company was the result of the consolidation of the two old companies, and it undertook the completion of the missing link. Dyer County, of which Newbern is a flourishing village, would be crossed by the finished road.

The assignments of errors are so defective as to raise no question of fact, but the second assignment is sufficient to raise a question of law. We have, therefore, treated the facts as found by the Circuit Judge as the facts of the case, and will test the soundness of the result he reached by the law applicable. The facts necessary to be stated, as found by His Honor, are as follows:

"That work was commenced on said unfinished part of the road early in 1872, and the Dyer County line was reached on the north in April, 1873, and on the 28th of that month it ran its train of cars into Trimble Station, in said county. On the 15th of May thereafter the company made a call for one-fourth of the subscription, according to contract." This call, together with the second and third calls, were likewise paid by each of the defendants. "The company did work on the road in Dyer County until the last of July or first of August, 1874, at which time it ceased operations and work of all sort. The work principally done in Dyer County was between Dyersburg and Trimble Station; the road was mostly graded, or a great deal of it, from Trimble Station to Newbern, and between Newbern and Dyersburg, and in places bridges were constructed, and cross-ties were collected in one or more places to be placed on the road. The road was widened at the place where the depot now stands (in Newbern) as if for side-track; but the company owned no property or land outside of the right of way upon which a depot could be located."

He further held that the proof did not show any further preparations for the establishment of a depot at Newbern than the widening of the grade at that point for side-track purposes. He further found that, shortly after cessation of work in August, 1874, foreclosure proceedings were instituted by bond creditors, and the property and franchises

of the corporation sold at public sale, and acquired by the Chesapeake & Ohio Railroad Co.; and this company, being an entirely new and independent organization, has since finished the projected road through Dyer County. That to induce location of depot at Newbern, citizens of that place had been compelled to make a new contract with the successor company, who had assumed none of the contracts or liabilities of the old company. He further found that the old corporation was utterly insolvent at the time it abandoned work, and that at time of trial it had no property, franchises, and practically no existence.

The subscription list was accepted by the Paducah & Memphis Railroad Co., and on the 12th of September, 1873, after payment of first call by subscribers, was assigned to Childs, Stephens & Co., contractors for work in Dyer County, in part payment for work done and to be done by them. The suit is by these assignees and creditors of the insolvent company. Three of the suits are for the fourth call, which matured in May, 1874, and before work had ceased, and the fourth defendant is sued alone upon the fifth and last call, which did not mature, in point of time, until September, 1874, which was after all effort to complete the road had been abandoned. The question is as to whether defendants are liable for any of the unpaid calls. His Honor, the Circuit Judge, was of opinion that the construction of the road to the line of the county was a condition precedent

to any liability, but that this condition had been met. He was further of opinion that the stipulation requiring the establishment of a depot at Newbern was an independent provision, and not a condition precedent to liability upon the contract of subscription. This latter provision he held required and meant the erection of a depot building, with reasonable facilities for freight and passengers. Upon these facts, and upon the contract as thus construed, the Circuit Judge held that, although the stipulation as to a depot was not a condition precedent, yet it was a part of the agreement of the corporation which, at some reasonable time, it was bound to carry out, and that as it was now obvious that the utter insolvency of the company, and the sale of its property and franchises, had rendered the performance of this contract impossible, that it therefore followed that the defendants were released from liability upon their stock, both as to calls accruing before and after the abandonment of work upon the road.

In this conclusion we think he erred. If it be conceded that the proviso concerning a depot at Newbern is not a condition precedent, as His Honor does, then it must follow that a breach of an independent covenant will not discharge the other parts of the contract, but that the party damaged by such breach must rely upon his remedy at law for damages, or his remedy in equity, by bill for a specific performance. Such breach will not defeat a right of action upon those parts

of the contract not dependent upon it. Before such right of action for a breach of this covenant arose the stock list was assigned to creditors of the company, and hence such breach cannot, as against such assignees, be set up to defeat or abate their legal right of recovery. If the construction of a depot had been made a condition precedent to the subscription, or to liability for calls upon stock, then it would devolve upon plaintiff to show performance of such precedent condition; but, on the other hand, if the parties have not chosen to make responsibility depend upon performance of this stipulation, then, clearly, defendants must rely upon their independent remedy against the company.

We agree with His Honor that this proviso as to a depot was not a condition precedent, but a mere independent stipulation.

The capital of stock companies consists of their stock subscriptions. This is the basis of credit, and an essential to organization. This is a trust fund for the benefit of creditors in case of insolvency. Conditional subscriptions to the stock of corporations are unusual, and often operate to defeat subscribers who become such absolutely and upon the faith that all the stock is equally bound to contribute to the hazards of the enterprise. It misleads creditors, and is the fruitful source of litigation and disaster. Tending to the ensnarement of creditors, and contrary to a sound public policy, conditional subscriptions to corporate shares

Railroad v. Parks.

ought not to be encouraged. Their validity, however, is too firmly fixed by a long line of decisions to be now overturned, yet the courts will. not strain, where creditors are concerned, to convert independent covenants into conditions precedent. If a subscriber desires to make his liability depend upon the performance of some stipulation by the corporation, it is very easy for him to do so in express terms. In 'the case now under consideration, it is obvious that the subscribers did not intend to make the building of a depot at Newbern a condition upon which their liability should depend. They expressly provide that one-fourth of their subscription shall fall due when the line of the road is completed to the county line.

Now, this was a condition precedent, but when it was complied with the subscription became absolute, and one-fourth payable at once, and the remainder as the work progressed through the county, in four installments, four months apart. Now, a depot at Newbern would be folly without a railroad in operation, and every installment might fall due by lapse of time and continued work within the county, before a depot would be of any practical value. The fact that the first call became payable when the road reached the county line, settles the meaning attached to this stipulation. The acts stipulated to be done are to be done at different times. Hence they are independent of each other, and the remedy of the subscriber for breach of such a stipulation

37

is in damages. *Goldsborough* v. *Orr*, 8 Wheat., 217.

The defendants have pressed upon us the case of *R. R.* v. *Curtis*, 80 N. Y., 219, S. C. 1 Eng. and Am. Railroad Cases, as sustaining the conclusion of the Circuit Judge.

This case has been carefully examined, and we are of opinion that it in no way supports the contention of defendants. The contract in that case was one between subscribers, whereby they agreed *to become* subscribers to the stock of the railroad company upon certain conditions. They did not, as held by the Court in that case, become shareholders *in præsenti*, but only pledged themselves to one another to *thereafter* subscribe, and upon condition that the road should be actually constructed by the Lake Shore Company through the town of Parmer. The Court held that the actual building of the road by the Lake Shore Company was a condition precedent, and that this condition had never been complied with.

The case of *N. & N. W. R. R. Co.* v. *Jones*, 2 Cold., 574, is likewise relied upon. It decides nothing that is in conflict with our view of this case. That case was an action by the company against a subscriber who had subscribed upon the express stipulation that his subscription should be void unless the road was constructed upon a certain line. The directors did locate the road upon the agreed line, but afterwards abandoned this line and constructed the road upon a totally different line.

This Court properly held that, by the very terms of the subscription, it became void by this action of the company.

The view we have taken as to the construction of this contract, and the effect of the insolvency of the company upon the stipulation as to a depot at Newbern, is supported by a number of well-considered cases in the courts of other States.

*Berryman* v. *Trustees Southern Railway*, 14 Bush, 755; *Winkler* v. *R. R.*, 29 Mo., 218; *McMillen* v. *R. R.*, 15 B. Monroe, 218; *Swortant* v. *R. R.*, 24 Mich., 389; *Miller* v. *R. R.*, 40 Penn. St., 237; *Chamberlain* v. *R. R.*, 15 Ohio St., 225.

This brings us to a consideration of the question as to whether a suit for the last installment of these stock subscriptions can be now maintained. The subscription provided for the maturity of the calls subsequent to the first in the following language:

" The remainder of the amount subscribed to be paid in four equal installments of four months *as the work on the road progresses through the county."* The work was progressing at the time the second, third, and fourth calls were made, and there can be no doubt but that they were rightfully called, and properly demanded. But when the last installment was called all work had been abandoned, and has never been since resumed. We are of opinion that this last installment has never matured. The requirement that the calls subsequent to the first should be made in equal

installments " as the work progressed through the
county," is a condition precedent to the maturity
of each installment; and the abandonment of the
work before it was finished, and before, in point
of time, the last call could have been made if
the work had been carried on in good faith, defeats
the action for this installment. No right to call
for or sue upon this installment exists by reason
of the failure of the company to show that the
road was finished, or work going on, within the
county at the time it was demanded. The objec-
tion is made by defendants that these suits cannot
be maintained because no tender of stock certifi-
cates has been made. This assignment of error is
not tenable. This is not a case of the purchase
of stock certificates as negotiable securities. The
tender in such a case might be necessary to main-
tain suit for the price. But no tender is neces-
sary to maintain suit upon an ordinary subscrip-
tion for stock. Morawetz on Corporations, §§ 61
and 148, (2d Ed.)

The set-off relied upon by the defendant, Fer-
rell, in the suit against him was improperly disal-
lowed, the Court holding " that there was no
proof that defendant filed or relied upon said ac-
count as a set-off in that case until it was barred
by the statute of limitations." This suit was be-
gun before a Magistrate, and no formal plea of
set-off was necessary there, or upon trial of ap-
peal in Circuit Court. He did in fact rely upon,
and prove, that the company was in fact indebted

to him by account for lumber used in construction at the time they assigned his subscription to plaintiffs. This account was not barred at time suit was instituted against him upon his subscription, and the statute did not thereafter run against his set-off. *Williams* v. *Lenoir*, 8 Bax., 395.

Upon this plea of set-off, the judgment in favor of Ferrell (though placed by His Honor upon another ground) must be affirmed. The judgment in favor of Hoskins must also be affirmed, as he is alone sued upon the last installment, having paid all the others. The cost of both these cases in the Court below, and one-half the costs of this Court, will be paid by appellants. The judgments in favor of Parks and Harris must be reversed, and judgment rendered here for the fourth call, with interest and costs in each of the cases against them and one-half the costs of this appeal.