[Filed December 8, 1890.]

## THE A. & S. C. R. CO. v. GEORGE HILL.

PRIVATE CORPORATIONS—ASSESSMENT OF STOCK.—After one-half of the capital stock of a private corporation in this state has been subscribed and a board of directors elected, assessments may legally be made upon the stock so subscribed. *Willamette Freighting Co.* v. *Stannus,* 4 Or. 261, approved.

SAME—ACTION TO RECOVER ASSESSMENTS—TENDER OF CERTIFICATE FOR SHARES NOT NECESSARY.—In case of an ordinary subscription to the capital stock of a corpora-tion, a tender of the certificate for the shares so subscribed is not a condition prece-dent to the right to maintain an action to recover assessments legally made on such share.

Multnomah county : E. D. SHATTUCK, Judge.

Defendant appeals.     Affirmed.

This is an action to recover $1,500 and interest claimed to be due plaintiff from defendant as delinquent assessments on twenty shares of plaintiff's capital stock of the par value of one hundred dollars each, subscribed for by defendant A trial was had in the court below which resulted adversely to defendant, and hence this appeal.

C. J. Curtis, for Appellant.

C. W. Fulton, for Respondent.
XX OR.—12.

BEAN, J.— The facts in this case are these: On August 11, 1888, plaintiff was duly incorporated with a capital stock of $75,000, divided into 750 shares of one hundred dollars each, for the purpose of constructing, owning and operating a railroad from Astoria to Tillamook bay, with its principal office at Astoria. On August 13th stock-books were duly opened to receive subscriptions to its capital stock, when defendant and other persons subscribed to the following contract in writing in said book, to wit: "Subscriptions to the capital stock of the Astoria & South Coast Railway Company, incorporated August 11, 1888, at Astoria, Oregon; capital stock, $75,000; amount of each share, $100.

" We, the undersigned, hereby subscribe to the capital stock of the Astoria & South Coast Railway Co. the number of shares set opposite our respective names by us subscribed, and we agree to pay for each share the sum of one hundred dollars at the time or times and in the manner assessed and ordered by the board of directors of said corporation hereafter."

That when defendant subscribed said contract he set opposite his name ten shares and the sum of one thousand dollars as being the sum he agreed to pay therefor. On August 18th more than one-half but not all of the capital stock of plaintiff having been subscribed, at a meeting of the stockholders duly called, plaintiff was duly organized and a board of directors elected, who immediately qualified and entered upon the discharge of their duties. On September 24, 1888, an assessment of 25 per cent; on November 3, 1888, an assessment of 10 per cent, and on February 25, 1889, an assessment of 65 per cent, was duly levied on the capital stock of the plaintiff. The defendant was notified of each of said assessments and payment thereof demanded and paid the assessments of September 25 and November 3, 1888, and $150 on that of February 25, 1889, and no more; that in July, 1889, said stock-book of plaintiff still being open to receive subscriptions to its capital stock, defendant again subscribed for ten shares of the par value of one

hundred dollars per share; that on July 8, 1889, a large number of additional shares having been subscribed, including the ten shares subscribed for by defendant, an assessment of 25 per cent on each share of said additional subscription was duly levied, and on August 12, 1889, an additional assessment of 75 per cent was duly levied on each of said shares; that defendant being duly notified of each of said assessments, refused to pay any part thereof.

The defendant claims that before plaintiff can maintain this action against him it must aver and prove that its full capital stock has been subscribed; that it was an implied part of his contract of subscription that the contract was to be binding and enforceable against him only after the full seventy-five thousand dollars, the amount of plaintiff's capital stock, had been subscribed, and that until the stock was all subscribed the corporation could do no business except to elect directors. There are many authorities to the effect, and we suppose it will be generally conceded, that unless otherwise provided by the act of the legislature authorizing the corporation to be created, or by the charter of the company, or by the contract of subscription, all the capital stock of the proposed corporation must be subscribed for before any stockholder can be compelled to pay any assessment on his stock or before the company can enter upon any of its corporate business, but the act of incorpora- tion may of course vary this rule. (See sections 176 and 177 of Cook's Stock and Stockholders, and notes, where the authorities seem to be fully collated.) Plaintiff was incorporated under the general incorporation act of this state, which among other things provides "that it shall be lawful in the organization of any corporation to elect a board of directors as soon as one-half of the capital stock has been subscribed." (2 Hill's Code, § 3222.) The question of defendant's liability must be determined by the construction to be given to this provision of the Code in connection with the remaining provision of the general incorporation act. The question now before us was considered by this court in

the case of *Willamette Freighting Co.* v. *Stannus*, 4 Or. 261, and the conclusion there reached, after an elaborate argument by counsel and a careful and exhaustive examination by the court, was that in this state the subscription to the entire amount of the capital stock of a corporation is not a condition precedent to a legal corporate existence; and that after one-half of the capital stock is subscribed, the stockholders may proceed to the election of directors, and after the election thereof assessments may be legally made upon the unpaid stock so subscribed although the full amount has not been subscribed. The same construction of the statute is recognized by this court in the case of *Coyote G. & S. M. Co.* v. *Ruble*, 8 Or. 294, where BOISE, J., in speaking of Ruble's supposed liability to the plaintiff, says: "It is claimed that he owed the corporation this amount at the commencement of this suit. To put him in such a position he must be a subscriber to the stock of fifty thousand dollars. The records of the corporation must show that this amount is due and owing. To show this, it must be shown by the records of the corporation: 1. By the stock-books signed by Ruble or evidence equivalent to such signing. 2. *That one-half of the capital stock of the corporation has been subscribed.* 3. That an assessment has been made on all such stock for twenty-five per cent of such stock." The decision in *Willamette Freighting Co.* v. *Stannus* has been recognized as the settled law of this state since its rendition in 1872. Corporations have been organized, and we must assume have proceeded to business without all the capital stock being subscribed for, relying on the doctrine of that case, as plaintiff probably did. They have levied and collected assessments on their subscribed capital stock, incurred debts and obligations, and engaged in vast and important enterprises, so that whatever we might be disposed to hold if the question was *res integra*, we do not feel at liberty to depart from the rule heretofore announced by this court.

It is also claimed that the issuance and tender to defendant of certificates for the shares of stock subscribed for by

him is a condition precedent to the right to maintain an action for the unpaid assessments. The effect of the ordinary subscription to the capital stock of a corporation is to constitute the subscriber a shareholder immediately, with the right to vote at meetings and share in the dividends, and subject him to a liability to contribute to the amount of his subscription when called upon in a legal manner. His engagement is created directly by the act of subscription. It is the subscription that makes him a shareholder. The certificate is but evidence of the fact of his being a shareholder — a written acknowledgment on the part of the corporation of his interest in the corporate franchise and property. It has been repeatedly held that the tender of a certificate for shares is never a condition precedent to the liability of a shareholder to contribute the amount of his shares after a proper call. (1 Morawetz on Corp. §§ 61, 148; *Paducah & M. R. R. Co.* v. *Parks*, 86 Tenn. 554; *Hawley* v. *Upton*, 102 U. S. 314; *Fulgam* v. *The M. & B. R. R. Co.* 44 Ga. 597; *The South G. & F. R. R. Co.* v. *Ayres*, 56 Ga. 230; Cook on Stockholders, § 10.) The case of an ordinary subscription for shares in a corporation differs from a sale and purchase. Where a person agrees to take or purchase shares, many authorities hold that it is the intention to buy the certificates as a salable article. The delivery of the certificates and payment of the price are considered concurrent acts, and in a failure to carry out the contract neither party can charge the other without averring a tender of performance. Of this class is the case of *Robbins* v. *St. Paul, S. & F. R. Co.* 22 Minn. 286, relied on by defendant. This was an action to recover the amount of a subscription to preferred stock of the plaintiff, ordered issued and sold long after the company was organized, and was not a subscription to the original stock. The court held that the subscription by defendant constituted a valid contract on the part of the company to issue the stock to defendant, and on his part to pay for it, but before the company could maintain the action it must

Statement of facts.

allege and prove a tender of the certificate for the stock to defendant.

The court in its opinion, however, recognizes the doctrine we have announced as applicable to ordinary subscriptions, and says: "Such a subscription gives to the subscriber an interest in the corporation and the right to take part in organizing it, and this interest and right are a sufficient consideration to support his promise."

Judgment of the court below is therefore affirmed.