[No. 7811]

## THE LILYLANDS CANAL & RESERVOIR COMPANY v. WOOD.

1. CORPORATIONS—*Contract with Director—Validity*—Wood and two others were the directors of the defendant corporation, which had been organized for the purpose of constructing and operating a system of reservoirs and canals for the irrigation of lands. Wood had initiated proceedings for securing water rights, reservoir sites, and ditches, for the irrigation of certain public lands, afterwards acquired by those interested in the corporation. A contract between Wood of one part, and the corporation of the other (only the other directors voting thereon), by which Wood was to assign to the corporation his interest in such water rights, reservoirs and ditches in consideration of certain shares in its capital stock, Wood at the same time agreeing to purchase other shares at par, to be paid for as called by the directors, no call to exceed a certain percentage in any one month. *Held,* as between the corporation and Wood, and between creditors and Wood, an enforcible contract; and that, the shares being charged to him on the books of the company, and certificates issued therefor, Wood was entitled to vote these shares, though the certificate was retained by the company as collateral security for the performance of his engagements; and that Wood's assignees of such shares succeeded to his right.

2. ——*Stockholders—Right to Vote*—Under Rev. Stat. secs. 850, 873, a stockholder in a corporation is entitled to vote upon the shares held by him, at all meetings of the stockholders, even though the stock is not full paid, and though the corporation retains the certificates to secure payment.

3. ——*By-Laws*—It is not within the power of a corporation to declare, through a by-law, that only such stock as has been full paid shall be represented and allowed to vote at stockholders' meetings, because in conflict with statutory provisions.

4. ——*Amendment of Articles—Stock Vote Required*—Where an amendment proposed to the articles of association of a corporation fails to receive the vote of two-thirds of the stock then in good faith outstanding it is not lawfully adopted and is without effect. (Rev. Stat. § 882.)

5. ESTOPPEL—*By Conduct*—A corporation which accepts a proposal to purchase its stock, treats it for years as a valid subscription, and receives large benefits thereunder is estopped to deny its validity.

6. EQUITY—*Jurisdiction*—A court of equity may annul and set aside an attempted amendment of the articles of association of a corporation, which the corporate authorities have declared adopted, where in fact such amendment failed to receive the vote of the number of shares required by statutes. Rev. Stat. sec. 885.

*Error to Montrose District Court.*—Hon. Sprigg Shackleford, Judge.

Messrs. Sherman & Sherman, for plaintiff in error.

Mr. John Gray, Messrs. Morrison & DeSoto, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

Lucy F. Wood, for herself and others in like interest, brought suit in the district court of Montrose county against the Lilylands Canal and Reservoir Company, to have certain amendments, increasing the capital stock of the company and enlarging its objects and purposes, declared void and their enforcement enjoined. The cause was tried by Phillip W. Mothersill, Esq., referee, who reported findings of both law and fact, upon which judgment was entered for plaintiff as prayed, and the defendant brings the cause here for review.

It is unnecessary for the purposes of this opinion to rehearse in detail the manifold claims and contentions of the parties. The only serious fact conflict is found in the charges of fraud and conspiracy, concerning which the referee found that there was no evidence to charge the plaintiff and others like interested. The findings of fact by the referee are supported by the evidence, were favorable to the contentions of the plaintiff and will not be disturbed. A brief summary of the history of the controversy and a statement of the issues follow.

In March, 1906, plaintiff, Lucy F. Wood, with C. A. Wood, her husband, and I. D. McFadden, incorporated under the laws of this state the Lilylands Canal and Reservoir Company, for the purposes suggested by its name, with a capital stock of 100,000 shares of the par value

of $1.00 each, and were named as its first board of direct-
ors. At the time of the organization of the company,
neither the incorporators nor those who afterward
became its stockholders owned any land, but there was
a body of government land open to entry, upon which
those interested in the company afterward made filings.
Mr. Wood had theretofore initiated proper proceedings
to acquire water rights, locate reservoir sites and ditches,
to provide a system by which these lands could be irri-
gated. At a meeting of the board of directors on May 17
of that year, I. D. McFadden was chosen president, Lucy
F. Wood, vice-president; Elsie W. Wood, secretary and
treasurer, and C. A. Wood superintendent. Thirty
shares of the capital stock at par was issued to each
McFadden, Lucy F. Wood and C. A. Wood for cash. At
this meeting the incorporators undertook to formulate
and adopt some plan by which the company would be
able to raise money to construct ditches and reservoirs,
so as to divert water and carry it to the lands in question
for irrigation. The plan was for Wood to turn over to
the company the claims which he had initiated for water
rights, reservoir and ditch sites, and with this in view he
submitted the following proposal at that meeting, which
was accepted by the votes of the other two directors:

"To the Lilylands Canal & Reservoir Co.

In consideration for all rights and title in the Lily-
lands Ditch & Reservoirs, now on file in the office of the
State Engineer at Denver, Colo., and in the Co. Clerk of
San Miguel Co., Colo., I hereby agree to accept Twenty
Five Thousand shares of the capital stock of your com-
pany and I hereby agree to pay all just claims against
the rights so transferred up to March 8th, 1906.

In consideration of the acceptance by your company
of the above proposal I hereby agree to purchase Seventy
Four Thousand Nine Hundred and Ten shares of your

Company's capital stock at the price of one dollar, cash, per share to be paid for as called by the directors of said company, not exceeding two per cent in any one month. The certificate for the entire amount to be issued to me, and I will deposit with the L. C. R. Co. certificates for 80,000 shares, the same to be held by the company as collateral security that I will make payment for the said certificates as per agreement; the certificates so paid for to be released and delivered back to me dollar for dollar as rapidly as redeemed.

Signed this 17th day of May, 1906.

C. A. Wood"

McFadden owned a one-half interest in the Wood rights. Stock was issued to Wood in conformity with the contract, 25,000 shares full paid, and 74,910 shares at $1.00 each were charged to him upon the books of the company, and certificate No. 2 for 80,000 shares was thereupon returned by him to the company, to be thereafter issued on his order as paid for at par, in conformity with the terms of the contract. On the same day Wood assigned one-half of that certificate to McFadden, and new certificates issued for 40,000 shares each, the old certificate was canceled, and appropriate entries were made upon the company books debiting the one account and crediting the other. It appears that there was a *bona fide* attempt to thus launch the company and dispose of and finally deliver stock out of the 74,910 shares as the company should receive cash, or its equivalent, therefor. As soon as the organization was complete, sales of stock began to be made in small blocks, desert filings on government land were made, and after the lapse of about three years and a half from the date of the organization of the company practically $65,000 from all sources had been paid in cash to it for stock out of the 74,910 shares, from the proceeds of which a large amount of construction

work was done on the reservoir and ditch. Rights in this stock became scattered among scores of actual settlers on land irrigated by water obtained and diverted through the system Wood had initiated and turned over to the company. During all of this time the validity of none of the stock issued under the Wood proposal had been questioned, and every share of it had been allowed to vote at all prior stockholders' meetings. This stock was divided and subdivided, falling into the hands of various purchasers, and in each instance appropriate debits and credits were recorded on the books, the old certificates canceled and new ones issued. Plaintiff became in due course the assignee of some of these shares. On September 21st, 1909, the management of the company having passed into new hands, the board of directors adopted a by-law providing, in substance, that no stockholder should be permitted to vote or represent, at a stockholders' meeting, any stock of the company that was not full paid and issued by the secretary of the company. At a stockholders' meeting on the following day a proposed amendment to the articles of incorporation, increasing the capital from 100,000 shares to 150,000 shares, par value unchanged, was voted upon and declared adopted. At this meeting shares of stock to the total number of 21,068, charged upon the books to the plaintiff and others in like interest, were denied the right to vote. At a subsequent stockholders' meeting, November 3rd next thereafter, the same number of shares, and probably the identical ones, were again excluded from voting upon a proposed amendment purporting to enlarge and extend the objects and purposes of the company, which was also declared adopted. The contention is that the shares so excluded were wrongfully denied the right to vote. If this is true, then the purported amendments did not receive a vote of two-thirds of all stock of the company "then subscribed and in good faith out-

standing," as required by section 882, Revised Statutes 1908, and were not in fact lawfully adopted. We quote from the referee's report:

"That at said meeting (November 3, 1909) the officers of the company held that there were outstanding and entitled to vote on said amendment only 68,177 shares of stock; that shares of stock in said company amounting to 21,068 standing in the names of various parties were refused the right to be voted on the question of said amendment; that the number of shares voted for said amendment was 48,377; and that the stock allowed to vote was considered full paid.

"That besides the 6,874 shares standing in the name of C. A. Wood which he was refused the right to vote on said amendments the following is the list of persons, the number of shares standing in their names respectively, the date when acquired and the amounts paid by each on the shares not allowed to vote on said amendments."

Then follows the list, aggregating 14,194 shares, with a credit of $4,434.16 paid thereon. A similar finding was made as to the meeting of September 21st, 1909. The court, upon the findings of the referee, declared the amendments void, enjoined the company from issuing any shares in excess of the original capital, from exercising the additional power granted by the second purported amendment, and from selling, renting and disposing of water to the lands of persons not holding stock under the original issue of 100,000 shares.

The main defense is that the incorporators entered into a conspiracy in the original formation of the company, to secure to themselves without consideration its total capital stock, and then sell it to innocent third parties at greatly advanced prices, to their own profit and not for the benefit of the company. A reversal of the

judgment is sought on the ground that the stock issued to Wood under his proposal, 99,910 shares, practically the entire capital of the company, is void under section 9, article 15 of the constitution, which reads:

"No corporation shall issue stock or bonds, except for labor done, service performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void."    *    *    *

The substance of this contention, if sound and enforced, would nullify every share of stock of this company, not only those of which complaint is made, but the entire issue, except ninety shares, for the balance was all issued under the Wood proposal. If a part of this stock is void because the original issue is illegal, then it is all void. If the contract upon which the original issue is based is to be held invalid as to a part of the stock, it must be so held as to all of it; and unless the company is able to restore parties to their original *status*, which it manifestly cannot now do, the contract should be upheld and enforced, at least against the company's complaint. The defense urged is nothing more or less than a collateral attack upon the very existence of the company. It is offered in an equitable action brought by some of the stockholders seeking to redress alleged wrongs, perpetrated by the company in excluding them from participation in the conduct of its internal affairs. Even if relief such as this defense suggests were proper in a proceeding like this, no court would be warranted, upon this record, in declaring that the stock issued pursuant to the Wood contract was not issued upon valuable and adequate consideration, or that the transaction was fraudulent. It is at least manifest that the company itself has not been thereby imposed upon or misled.

The plaintiff contends that by assent to, acquiescence

in and acceptance of benefits from the contract now sought to be repudiated, the company is estopped to question its validity. It appears from the minutes of a meeting of the board of directors held May 1st, 1908, that Wood and McFadden released to the company all claims to reversions upon or default in payment of assessments on stock sold by them to other parties, and also assigned to it their contracts for stock sales, and that the company accepted the same with the benefits arising therefrom. The record shows that these benefits were of large value. Several thousand shares of stock reverted to the company through defaulted assessments, and this stock is shown by the record to have largely increased in value, being worth two or three times par. The record also shows that the company, upon the stock thus issued, received a large sum of money, a portion at least of which was paid on account of the stock which was excluded from voting upon the amendments in question. While it may be true, as argued, that this stock was not the unqualified property of the subsequent purchasers, still the right to finally acquire it, under the terms of the Wood contract, had vested in them, and the company having accepted and acted under that contract is not now in position to withhold from such purchasers the power to exercise the rights thus acquired. They were in effect subscribers to the stock, having succeeded to the rights of Wood under the contract.

It must be borne in mind that the defendant in this case is the company itself. No individual stockholder or creditor is here complaining. If there were, an entirely different situation would be presented and different questions would arise. The company accepted the Wood proposal, treated it as a valid and binding subscription, issued stock on it, reaped large benefits therefrom, built some four or five miles of ditch through proceeds derived from it, and now, after purchasers have acquired rights

under that contract, seeks to have a court of equity declare certain of those rights void because the entire original issue was illegal. In seeking this relief there is no pretense that the company has in any way been damnified. Since the company recognized the Wood contract, acted under it and confessedly received substantial profits from it, it should not now be heard to say that the contract was void from its inception. It is settled, not only here but everywhere, that a corporation may not acquire and retain benefits under a contract to which it is a party and then deny its legal effect. *Bank v. Hammond,* 25 Colo. 367, 55 Pac. 1090; *Mulford v. Torrey Co.,* 45 Colo. 81, 100 Pac. 596; *Water Works Co. v. Holme,* 49 Colo. 412, 113 Pac. 501; 10 Cyc., pages 1067-1068, note 33, and cases cited in Cyc. Annotations 1913, page 1154. It is equally true that a corporation may not, under such circumstances, maintain a suit to have such contract set aside and annulled, and thus destroy the rights of holders of stock acquired under it in good faith and for value. No more can it successfully defend against the suit of a subscriber to stock brought to secure his rights under such contract on the ground that it is illegal and void.

Defendant cites *Old Dominion Copper M. & S. Co. v. Bigelow,* 203 Mass. 159, 89 N. E. 93, 40 L. R. A. (N. S.) 314, in support of the contention that the issue of 25,000 shares of its stock for the property rights of Wood, under the contract, was a fraudulent transaction, because the rights conveyed thereunder were of comparatively little value. In our view of this case it is unnecessary to consider or determine this question, for the company is, as already indicated, in no position to urge it. Research has led to a consideration of a companion case to the one above referred to, namely, *Old Dominion Copper M. & S. Co. v. Lewishon,* 210 U. S. 206, 52 L. Ed. 1025, 28 Sup. Ct. 634. The defendants in these cases were joint tortfeasors, living in Massachusetts and New York respec-

tively.  The Massachusetts decision was rendered by a bare majority of the court, and was accompanied by very able and convincing dissenting opinions.  The particular proposition involved in the Massachusetts case, and to which it is here cited, was likewise controlling in the New York case, which was finally disposed of by a conclusion in direct conflict with that of the Massachusetts court, by the unanimous opinion of the United State supreme court.  This latter decision was on a writ of certiorari to the United States circuit court of appeals for the second circuit to review a decree of the circuit court for the southern district of New York, sustaining a demurrer to, and dismissing, a bill brought by the corporation to rescind a sale to it of property belonging to the organizers and promoters of the company at a price which gave them an enormous profit.  The facts and circumstances in the case at bar are strikingly similar to those upon which that decision rests, one of which is that when the various transactions of which complaint is made in both cases took place, all of the then existing stockholders were participants.  In that opinion it was said:

"The argument for the petitioner is that all would admit that the promoters (assuming the English phrase to be well applied) stood in a fiduciary relation to it, if, when the transaction took place, there were members who were not informed of the profits made and who did not acquiesce, and that the same obligation of good faith extends down to the time of the later subscriptions, which it was the promoters' plan to obtain.  It is an argument that has commanded the assent of at least one court, and is stated at length in the decision.  But the courts do not agree.  There is no authority binding upon us and in point.  The general observations in *Dickerman v. Northern Trust Co.*, 176 U. S. 181, 44 L. Ed. 423, 20 Sup. Ct. Rep. 311, were *obiter*, and do not dispose of the case.

Without spending time upon the many dicta that were quoted to us, we shall endeavor to weigh the considerations on one side and the other afresh.

"The difficulty that meets the petitioner at the outset is that it has assented to the transaction with the full knowledge of the facts. * * * The contract had been made and the property delivered on July 11 and 12, when Bigelow, Lewishon, and some other members of the syndicate held all the outstanding stock, and it is alleged in terms that the sales were consummated before the vote of July 18, to offer stock to the public, had been passed. * * * It is difficult, without inventing new and qualifying established doctrines, to go behind the fact that the corporation remains one and the same after once it really exists. When, as here, after it really exists, it consents, we at least shall require stronger equities than are shown by this bill to allow it to renew its claim at a later date because its internal constitution has changed. * * * If we should undertake to look through fiction to facts, it appears to us that substantial justice would not be accomplished, but rather a great injustice done, if the corporation were allowed to disregard its previous assent in order to charge a single member with the whole results of a transaction to which 13/15 of its stock were parties, for the benefit of the guilty, if there was guilt in anyone, and the innocent alike." 3 Cook on Corporations, 6th Ed., § 729, pg. 2386.

So here, the defendant company, with full knowledge of the entire situation, having accepted the contract as valid, received and retained benefits accruing from it, is estopped in this connection to attack the legality of the transaction. The Lewishon case, supra, having been decided on facts and circumstances so closely analogous to those in the case at bar, is direct authority for our conclusion here, that the defendant company cannot be

heard to say that the contract under consideration is a nullity.

The controversy is therefore narrowed to a single question: Was the stock of plaintiff and others in like interest, though not fully paid for, wrongfully excluded from voting upon the proposed amendments submitted at the September and November meetings?

This proposition is discussed in the case of *Water Works Co. v. Holme, supra,* as follows:

"Our statutes seem to recognize that an accepted subscriber to the capital stock of a corporation becomes a stockholder by the mere act of subscription, regardless of whether the subscription is paid or not. Section 241 of the Gen. Stats. 1883, and, as it was amended, section 480 Mills' Ann. Stats., section 850 Rev. Stats. '08, provides, among other things, that subscriptions shall be made payable to the corporation in such installments as may be determined by the directors; that an action may be maintained to recover any installment due and unpaid for twenty days after demand therefor, and, speaking with reference to a written demand upon the delinquent, the section does not describe him as a subscriber, but as a delinquent stockholder. The same section provides that the proceeds of any sale, over the amount due on the shares sold, shall be paid to the delinquent stockholder. No installment may have been paid, yet, under this section, the delinquent stockholder would be entitled to the proceeds of the sale over the amount necessary to pay his subscription. It might well be asked, if he was not the owner of the shares, why should this surplus be paid to him? Section 486 Mills' Ann. Stats., section 873 Rev. Stats. '08, says that each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him. This

section seems to recognize a subscriber who has not paid his subscription as a stockholder. In the light of these statutes, were it necessary to hold that an accepted subscriber to the capital stock is a stockholder, the following authorities, which say that the effect of an ordinary accepted subscription to the capital stock of the corporation makes the subscriber a stockholder and it is not necessary that he should have paid for his stock, would be worthy of consideration: *A. & S. C. R. Co. v. Hill,* 20 Or. 177 [25 Pac. 379]; 1 Thomp. Corp. sec. 1139; *Wheeler v. Millar, supra,* 99 N. Y. 353; *Mitchell v. Beckman,* 64 Cal. 117 [28 Pac. 110]; *Schaeffer v. Mo., etc., Ins. Co.,* 46 Mo. 248; *The W. & M. R. Co. v. Dwyer,* 49 Iowa, 121.''

The general rule is also stated in that opinion to the effect that where a sale of personal property is made on credit, unless a different intention is shown by agreement or otherwise, the property in the goods passes to the buyer on delivery, and, in absence of delivery, the property may pass, except as to third persons, although the seller retains the right of possession until the price is paid. 35 Cyc. 323.

In *A. R. L. T. & Co. v. F. L. & T. Co.,* 13 Colo. 587, 22 Pac. 954, the court said:

''Such contracts (of subscription), when based upon a consideration, and enforceable, constitute the sole test by which the question can be determined whether a person claiming to be a stockholder is such in fact. There must be mutuality. The stockholder must be in a position to enforce his rights, and compel the corporation to recognize him as a stockholder. The corporation must be able to enforce the subscription agreement.''

And in 10 Cyc., at page 390, the rule is stated as follows:

"Whenever the subscriber pays, or obligates himself to pay, he is the owner of stock in the company. It is the payment, or the obligation to pay, that makes him a shareholder, with all the rights of one, if the certificate were not issued at all."

2 Clark and Marshall, Private Corporations, sec. 383, says:

"In the absence of an express charter or statutory requirement, the stock of a corporation need not be paid in in cash at the time of its organization, or within any particular time after its organization, but assessments or calls may be made upon the subscribers, as the money is needed. Neither payment nor the issue of a certificate is necessary, in the absence of an express provision, to make one a stockholder with all the rights and subject to all the liabilities of a stockholder."

The conclusions of the referee on this branch of the case correctly state the law applicable to the facts. They are, in effect, that the promise of Wood to pay the company $1.00 cash per share for 74,910 shares in installments as called for by the directors, but not to exceed two per cent per month, and the issuance to Wood of such shares, undoubtedly created an enforceable contract as between the company and Wood, and between creditors and Wood; that the assignments from Wood to other parties were subject to payment to the company of certain designated sums as called for by the company; that the assignees obtained the same rights relative to the stock assigned as Wood had; that Wood was entitled to vote the stock standing in his name prior to assignment, and consequently his assignees were entitled to vote the stock assigned to them, for which they had paid or were bound to pay, so long as their rights had not been cut off

through forfeiture for failure to pay assessments, or in some other lawful way.

It was not within the power of the company to declare through a by-law that only such stock as had been full paid should be represented and allowed to vote at stockholders' meetings. Such embargo upon the stock was unwarranted, and is in that respect in conflict with our statutes and the decisions upon the subject. Sections 853 and 865, Revised Statutes 1908; *People's Bank v. Superior Court,* 104 Cal. 649, 38 Pac. 452, 29 L. R. A. 844, 43 Am. St. 147; and 2 Cook on Corporations, 6th Ed., § 622.

The record discloses no equities in favor of the defendant company worthy of consideration. The judgment is right, and is affirmed.

*Judgment affirmed.*

Chief Justice Musser and Mr. Justice White concur.