## No. 11,728.

COLORADO INDUSTRIAL LOAN AND INVESTMENT CO. *v.* CLEM.

Decided October 3, 1927.

Action to recover money paid for stock of a corporation, and for cancellation of a note. Judgment for plaintiff.

*Affirmed.*

1.  CORPORATIONS—*Contracts.* The general doctrine is, that although a corporation makes a contract not authorized by its charter, if the contract is not expressly forbidden by statute and is not immoral or contrary to public policy, the corporation may not question its validity while retaining benefits thereunder.

2.     *Purchase of Stock.* A private corporation may not purchase its own stock if the transaction is not fair and in good faith.

3.     *Contract—Purchase of Stock.* A "contract of sale and return" executed by a corporation will be enforced if free from fraud, and the corporation not insolvent or in process of dissolution, and if the rights of creditors and other stockholders are in no way injuriously affected.

4.     *Contract of Sale and Return.* Under C. L. § 2260, corporate contract for sale and return of stock held valid unless a repurchase of the stock by the corporation would impair its capital.

5.     *Purchase of Stock.* The contention that under C. L. § 2260 a corporation may not purchase its own stock except out of its surplus funds, overruled.

6.     *Purchase of Stock—Presumption.* Where the capital stock of a corporation is repurchased under contract of sale and return, in the absence of a positive showing to the contrary, it will be presumed that the stock is to be held as an asset of the corporation, for sale.

7.     Pleading—*Defenses.* In an action against a corporation by a purchaser to recover amount paid for stock under a contract of sale and return, if the company intended to rely upon insolvency, impairment of capital or that a receiver had been appointed to take charge of its affairs, such matters should have been pleaded.

8.     Appeal and Error—*Judgment.* A defendant corporation may not complain on review that plaintiff recovered a judgment against it from which he will receive no benefit, and it is not entitled to a reversal because a receiver of its property was not made a party to the action, none of the interested parties having asked for the joinder.

9.     Corporations—*Contract of Sale and Return.* Where it appears that one was induced to subscribe for stock of a corporation by misrepresentations and thereafter sought a rescission of the contract and recovery of notes and money paid for the stock, he will not be defeated except on a showing that innocent persons will suffer, and the burden of such showing is upon the defendant.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. Everett Bell, for plaintiff in error.

Messrs. Swerer & Johnson, Mr. H. E. Luthe, for defendant in error.

*Department Two.*

Mr. Justice Campbell delivered the opinion of the court.

Plaintiff Clem bought of defendant company certain shares of its capital stock at an agreed price of $5,000, of which he paid in cash on delivery of the stock $4,500, and the balance of $500 was to be paid by him at a future time. In this action he sues the company defendant in its corporate capacity to recover the amount of the cash, and for a cancellation of the $500 note representing the deferred payment. In the amended complaint are four separate causes of action for the relief demanded, the first of which causes is based on fraudulent representations as to the assets of defendant; the second, like representations as to the value of the stock itself; the third, on a "contract of sale and return" giving plaintiff the privilege and right of returning this stock at any time he became dissatisfied with his bargain, in which event defendant company promised to pay for or repurchase the stock at the sale price; the fourth, that the shares sold plaintiff were part of an illegal or excessive issue and of no value. Trial was to the court, the parties waiving a jury. At the close of plaintiff's evidence the defendant's motion for a nonsuit was denied and in that connection the court informed defendant's counsel, to save time, that they need not produce evidence as to the alleged frauds, or undue advantage taken by defendant in the making of the contract of sale, or anything of that kind, and that the only thing the court would decide is the question of fact as to the alleged contract of sale as set forth in the third cause of action. The court further said that the testimony already taken by plaintiff is positive that there was such a contract and that plaintiff

relied upon it and that his purchase was made solely because of the promise of the defendant to purchase the stock in the event mentioned. Counsel for the defendant acted upon this suggestion of the court and withdrew its motion for a nonsuit and in producing its evidence restricted it to the third cause of action based on the sale and return contract and offered no evidence as to either the first, second or fourth causes. The record sufficiently shows that by tacit consent of the parties trial was had, the evidence was restricted to, and the findings of the court were made as though the suit was on the third cause of action alone and no claim was made by the plaintiff, except under the third cause, and there was no attempt of the defendant to produce evidence under either of the other three causes of action. The judgment or decree specifically rested on the findings of the court in plaintiff's favor under the third cause.

The record shows a most unusual situation. While much of the defendant's briefs is devoted to argument on legal questions that might, and probably would, be pertinent in a controversy between plaintiff and other stockholders or subscribers, or creditors of the company, or the receiver representing creditors, we fail to perceive their applicability in this action as tried and decided, which is one between the corporation itself and a purchaser of its capital stock who seeks to enforce his contract with it for taking back stock at a fixed price. That such defenses as might be interposed by creditors, and stockholders who bought on the faith of plaintiff's stock subscription and purchase from the defendant are not germane to this controversy, is apparent from defendant's answer to this third cause of action which is a general denial, and a further defense of an equitable estoppel of the plaintiff to maintain the suit by acquiescence in the control and management of the company by its president Harry Dickson and other officials, by himself becoming a director of the company after he purchased the stock. Nowhere in the answer to the third cause is there

even a suggestion or hint that the right of other stockholders or creditors could or would be injuriously affected if this contract sued on is enforced. It is true that in the first cause of action in the amended complaint, which is based on fraudulent representations as to assets, there is an allegation on information and belief that the defendant company was insolvent when plaintiff's contract was entered into; yet the answer of the defendant specifically denies the insolvency.

In this third cause of action, the one that was tried and decided by the lower court, there is not a word about insolvency. So that, as to this element, we find averment of it and a denial by the defendant. The trial court ignored it, made no finding upon it and only incidentally in the testimony is it referred to. We therefore have before us for review a decree upon a case made by a complaint asserting and an answer denying, the making of a contract of sale and return. The evidence as to insolvency, if any, as to the rights of other stockholders and subscribers, if any, was not considered by the trial court, but was eliminated by it, with consent of the parties and rightly so, because all questions of fraud, undue advantage, solvency, rights of creditors and stockholders were in legal effect stricken from the pleading.

But says defendant this contract is ultra vires and if enforced would necessarily impair the capital of the defendant and thus injure other stockholders and creditors. Though defendant in its brief separates this general objection into many subdivisions, they may be for our present purpose considered under the general heading. The general doctrine in this country, even without the aid of a statute, is that, although a corporation in making a contract acts in disagreement with its charter by making a contract unauthorized thereby, if the contract is not expressly forbidden by statute and is not immoral or contrary to public policy, if it is to receive a benefit from the agreement, it cannot be permitted in an action founded on it to question its validity while it re-

tains those benefits. Sedgwick Stat. & Const. Law (1st Ed.) p. 90 (2d Ed.) p. 73. The foregoing doctrine was approved by this court in *Denver Fire Ins. Co. v. Mc-Clelland,* 9 Colo. 11, 9 Pac. 771, 59 Am. Rep. 134; *Mulford v. Torrey Explo. Co.,* 45 Colo. 81, 100 Pac. 596; *Lilylands Canal & Res. Co. v. Wood,* 56 Colo. 130, 136 Pac. 1026; *American Bank v. Hammond,* 25 Colo. 367, 55 Pac. 1090; *Mountain Water Works Co. v. Holme,* 49 Colo. 412, 113 Pac. 501.

A large number of cases from various jurisdictions will be found in the footnotes to the case of *Gilbert, Trustee, v. Citizens' National Bank,* 61 Okl. 112, 160 Pac. 635, as reported in L. R. A. 1917A, 740. In an elaborate discussion of the doctrine applicable to the defense by a corporation of ultra vires, the author, while he says the doctrine cannot logically be based on the ground of equitable estoppel, as some of the courts have decided, still the relief, which the courts of this country now generally afford on this ground, might properly have been withheld by refusing to entertain actions brought on the ultra vires contracts themselves, and by the courts concentrating their attention upon the task of evolving a body of rules calculated to develop to the fullest extent such descriptions of relief as may be granted in a court of equity independently of such action. However that may be, the doctrine, with few exceptions, in this country has been so often announced and declared to be a matter of equitable estoppel that it is doubtful if the suggestion of the annotator will be followed. This doctrine is that a corporation may not receive the benefits of an ultra vires contract and then later seek to defend the action on the ground that it is invalid. The following cases upon the particular kind of contract involved in this case, which is generally called a "contract of sale and return," to purchase the company's own stock, among others which may be cited, are: *Main v. Casserly,* 67 Cal. 127, 7 Pac. 426; *Citizens' Natl. Bank v. Greene, etc., Tel. Co.,* 127 Iowa, 350, 101 N. W. 742;

*Western & So. F. Ins. Co. v. Murphey,* 56 Okl. 702, 156
Pac. 885; *Miller v. Wash. S. R. R. Co.,* 11 Wash. 414,
39 Pac. 673; *Sweeny v. United Co.,* 29 S. D. 576, 137 N.
W. 379; *Vent v. Duluth Coffee, etc., Co.,* 64 Minn. 307,
67 N. W. 70.

The only limitation to this doctrine that we have found
is that a private corporation may not purchase its own
stock if the transaction is not fair and in good faith.  If
it is free from fraud, actual or constructive, and the cor-
poration is not insolvent or in process of dissolution, and
the rights of creditors and other stockholders are in no
way injuriously affected, it will be enforced.  Indeed,
whatever the law might be in other states, our general
assembly (section 2260, C. L. 1921) has declared that
every corporation organized under the laws of this state,
as this one was, shall have the power to purchase shares
of its own capital stock, which purchased stock shall, un-
less the board of directors so determine and take appro-
priate proceedings for the decrease of its capital stock,
not be deemed cancelled or extinguished, and shall not be
voted upon directly or indirectly.  The only proviso at-
tached to the purchase is that it shall not be lawful for a
corporation to use any of its funds for the purchase of
stock in its own company or corporation when such use
will cause any impairment of its capital.  This of itself is
sufficient authority for saying that this contract is not
invalid unless such impairment has necessarily resulted.
Counsel for defendant here say that under this statute a
corporation cannot purchase or repurchase any of its
capital stock except out of its surplus funds.  We find
nothing in the section to that effect.  It reads that it shall
not be lawful for a corporation to use *any* of its funds for
such purpose if it will cause an impairment.  This lan-
guage of itself implies that it is not restricted to any
particular fund of its own.  If the intention of the legis-
lature was to restrict the fund to surplus it would not
have indicated that the corporation might use any fund
that it possessed for such purpose, so long as no impair-

ment of capital resulted. There is no evidence in this case that even tends to show that there would be any impairment of the company's capital by the purchase or repurchase of this stock. If the directors merged or extinguished or cancelled the stock after its purchase, such might be the result, but there is no evidence at all here that anything of that sort occurred and the record justifies the assertion that the company holds this stock in its treasury and may, at any time it sees fit and could do so, sell the same. If it is repurchased it becomes part of the company's property. The capital stock was not cancelled or extinguished. It is presumed to be held as an asset of the corporation for sale. Before we could hold otherwise, it would require some positive showing on the part of the defendant to the contrary to overturn the presumption that the stock was being lawfully held in the treasury by the defendant.

While the defendant made no affirmative defense, as it should have done, if it intended to rely upon the point, and produced no evidence which is in the abstract, as to insolvency, or as to impairment of the capital, or as to whether or not there are other stockholders who bought in reliance upon the plaintiff's subscription, if any, or that a receiver had been appointed for the defendant company before this action was brought, it does appear in the record that a receiver was appointed for the defendant company and was in possession of its property with a view to collect its claims against its debtors, to assemble its assets, and to wind up its affairs. The vice president of the company, Plettner, was appointed receiver of the company and through him the company was resisting the action. He was one of the witnesses who testified at the trial in behalf of each party. He was aware, of course, of the pendency of this action. Neither he, nor the plaintiff, nor the defendant, asked to have the receiver made a party to the action and the nonjoinder of the receiver as a party defendant seems not to have been called to the attention of the trial court. Whether or not

the judgment rendered against the corporation binds the receiver, is not a question now before us. If the plaintiff has recovered a judgment against a corporation from which he will receive no direct benefit defendant may not here complain. What the proper course should have been at the trial, with respect to making the receiver a party, if it was necessary, we shall not inquire. We are, however, forced to the conclusion that the plaintiff in error, the defendant below, is not in a position to ask, and it has not asked, for a reversal because the receiver was not made a party defendant. It is not entitled to a reversal upon any other alleged irregularity. So far as this record shows the trial court had no opportunity to pass, and was not asked to pass, upon any such alleged irregularity in rendering a judgment of this nature after the receiver had been appointed and was not made a party.

Neither are we advised in this record upon what ground the receiver was appointed. It might have been on the ground of insolvency. It might have been upon the ground of dishonesty and mismanagement of Dickson, the president, and his board of directors or some of its members. For aught we know there may be realized out of the assets of the defendant company a sufficient fund to pay all the indebtedness, and it may be that the amount of the claims against the defendant allowed by the receiver are small in amount and of no considerable importance. It has been held in a well-reasoned case by the Supreme Court of Iowa (*Independent Van & Storage Co. v. Iowa Mercantile Co., Kluss, Intervener,* 184 Iowa, 154, 168 N. W. 782) that where it appears that a stockholder induced to subscribe by misrepresentation, and seeking rescission and recovery of notes and money against a receiver of an insolvent company, has himself done no wrong, and is insisting only on his legal right, he will not be defeated, except on a showing that innocent persons will suffer. That doctrine is applicable here. There is no affirmative showing here by defendant that any other stockholder or creditor will suffer as the result

of the enforcement of this contract. In the Iowa case the court said that there was no showing that there were any creditors whose claims accrued after the intervener had pledged himself as a stockholder. The rule there laid down, which we adopt here, is that the burden of making such showing is upon the defendant in the action, which it here made no attempt to discharge.

The record being in such unsatisfactory condition, we have reached the conclusion that no reversible error was shown and the judgment must therefore be affirmed.

MR. JUSTICE DENISON, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.