495 P.2d 566 (1972)
Joseph HAMPTON et al., Plaintiffs-Appellees,
v.
TRI-STATE FINANCE CORPORATION, a Colorado Corporation, et al., Defendants-Appellants.
No. 70-588.
Colorado Court of Appeals, Div. II.
February 15, 1972.
Rehearing Denied March 7, 1972.
*567 Tinsley, Frantz & Heady, Lakewood, Ivan D. Fugate, Denver, for plaintiffs-appellees.
Dawson, Nagel, Sherman & Howard, Denver, for defendants-appellants.
Selected for Official Publication.
SMITH, Judge.
Plaintiffs-appellees are holders of Class B common stock of the Tri-State Finance Corporation. Plaintiffs' complaint in the district court against Tri-State Corporation and its directors alleged in essence that the corporation refused to allow voting by Class B stockholders at an annual meeting of the corporation.
Article IV of the articles of incorporation of Tri-State Finance Corporation, at all times pertinent hereto, read:
"The authorized capital stock of this corporation shall consist of one million shares of common stock . . . divided into the following classes:
"Class Ashall consist of one hundred thousand (100,000) shares of the par value of $1.00 per share and each shareholder of said Class A stock shall be entitled to one (1) vote per share.
"Class Bshall consist of nine hundred thousand (900,000) shares of the *568 par value of $1.00 per share . . .. The common stock Class A and common stock Class B shall be identical in all respects except that the holders of common stock Class B shall have no voting power for any purpose whatsoever and the holders of common stock Class A shall to the exclusion of the holders of common stock Class B have full voting powers for all purposes. . . ."
Plaintiffs alleged that the above voting restriction applicable to Class B stock denies its holders the voting rights guaranteed by Colorado statute; and that the entire voting restriction is therefore void. Plaintiffs also maintained that because Class B stock certificates were issued without the restriction or notice thereof printed upon the certificates, as required by C.R.S.1963, 31-4-8, the restrictions could not be enforced.
Tri-State answered, admitting their failure to comply with C.R.S.1963, 31-4-8, but alleged actual notice to most of the Class B stockholders. They suggested rescission as the remedy for those Class B stockholders not having actual notice of the voting restriction at the time of the purchase of their Class B shares. Plaintiffs moved for summary judgment which, after argument, was granted by the district court, ruling as follows:
"The Court concludes, as a matter of law, that the provisions in the Articles of Incorporation and in the Amendment to the Articles of Incorporation concerning the voting powers and restriction on voting powers are null and void because they would deprive the Class B shareholders of their statutory right to vote on certain matters as provided by CRS '63, 31-3-8, and their constitutional right under Article XV, Section 9 of the State Constitution.
"The Court also concludes, as a matter of law, that the failure to comply with CRS '63, 31-4-8(2) re Restrictions, is fatal to the defendants' contention that Class B shareholders are not entitled to vote since it is admitted that their certificates contain no notice of restrictions and were issued subsequent to the Amendment of the Articles of Incorporation."
The following passage from Fletcher elucidates the widely accepted understanding of the relation of a corporation's articles of incorporation to state statutes governing corporate activities:
". . . as a matter of law, the socalled charter [of a corporation] consists of such papers and the statutes under which the corporation is created. In other words, the provisions of the statute or general incorporation laws enter into and form a part of the charter. This is the meaning applied in construing the corporate charter, in doing which the incorporation papers and statute are to be construed together, the latter controlling in case of a conflict, and in this respect a charter under general law is the equivalent of one by special act.
"It is not necessary that the general law should be copied in the charter, but it forms an essential part of it, and all parties are bound by its terms, whether copied in the charter or found only on the statute book." (Footnotes omitted) 1 W. Fletcher, Cyclopedia of the Law of Corporations, 164 (1963, Rev.Vol.)
This statement reflects the law in Colorado. People ex rel. Bernard v. Cheeseman, 7 Colo. 376, 3 P. 716. In that case, the Supreme Court, holding that substantial compliance with statutory provisions is an essential prerequisite to the creation of a corporation, allowed a corporation to retain its status as a corporation, although its articles provided for a 50 year term of corporate existence when the statute allowed only a 20 year term. The defect was not a failure to insert something required, but rather it was inclusion of a provision that went beyond the statutory authorization. Nonetheless, the court construed the articles in light of the statute in order to allow the corporation's charter to retain its validity.
In the case at hand, we must assume that the parties intended to act within *569 the law and did not intend to restrict unlawfully the Class B stockholders' right to vote. Article IV of the articles of incorporation should be construed so as to give it validity under the statutes. The portions of Article IV that purport to exceed statutory authority are void, but all voting restrictions not contrary to the statutes are valid. This construction most nearly effects the result originally intended by the parties, as evidenced by the articles, and does not amount to an amendment or reformation of that document.
Plaintiffs argue that any denial of voting rights to one class of common stock in an election for directors of a corporation violates public policy. We disagree. The intention of the Legislature is evident from the use of the language, "whether or not entitled to vote thereon by the provisions of the articles of incorporation of the corporation," indicating those instances where it is mandatory that all stockholders vote despite restrictions contained in the articles. See C.R.S.1963, 31-3-8(1) (a); C.R.S.1963, 31-5-11(1) (c); C.R.S.1963, 31-5-12(2); C.R.S.1963, 31-7-3(2); and C.R.S.1963, 31-8-3(4). There is no such language concerning election of directors in C.R.S.1963, 31-5-2, or C.R.S.1963, 31-4-16.
The parties agree that C.R.S.1963, 31-4-8(2), has been violated. It reads as follows:
"(2) Every certificate representing shares issued by a corporation which is authorized to issue shares of more than one class shall set forth upon the face or back of the certificate, or shall state that the corporation will furnish to any shareholder upon request and without charge, a full statement of the designations, preferences, limitations, and relative rights of the shares of each class authorized to be issued and, if the corporation is authorized to issue any preferred or special class in series, the variations in the relative rights and preferences between the shares of each such series so far as the same have been fixed and determined and the authority of the board of directors to fix and determine the relative rights and preferences of subsequent series."
C.R.S.1963, 31-4-8, makes no provision as to the consequences of a violation of the statute. It does not require that the certificate carry the exact restrictions on the certificate, but only that the shareholder be informed by the certificate that upon request the corporation will furnish him with information as to classes of stock and their various restrictions. The purpose of the statute is to ensure that a purchaser of stock has notice of voting restrictions at the time of purchase.
Where notice has not been given pursuant to C.R.S.1963, 31-4-8, and where actual knowledge cannot be shown by the corporation, we agree that a remedy must exist. Plaintiffs argue in support of the trial court's finding that the remedy should be a refusal to enforce the voting restrictions. Such a remedy, however, alters substantially the rights of not only the aggrieved stockholders, but of all stockholders and creates two classifications of Class B stock. This would not be an equitable solution. It is settled that the relationship of stockholders to the corporation is one of contract and that the rights and duties of both parties grow out of that contract, which includes the terms of the articles of incorporation. Supply Ditch Company v. Elliott, 10 Colo. 327, 15 P. 691. In the absence of fraud, rescission would appear to be the most appropriate remedy.
"It is within the jurisdiction of a court of equity to give relief by enforcing the rescission of a contract or the cancellation of a conveyance or other written instrument on the ground of mistake, where the mistake is one of fact, material to the substance of the transaction, and mutual (or, if existing on one side only, known to the other party or induced by his fraud), and where it is not attributable to the negligence of the mistaken party not resulting from his own *570 violation of some duty . . . . [T]he remedy of rescission cannot be had without the restoration of the status quo or restitution." (Footnotes omitted) 1 H. Black, Rescission of Contracts and Cancellation of Written Instruments § 127 (2nd ed.)
Thus, absent a showing of actual knowledge at the time of purchase, failure to follow C.R.S.1963, 31-4-8, renders the stock contract voidable on the part of the stockholder or, if fraud can be shown, appropriate remedies exist. This theory has been recognized by the Colorado Supreme Court in Bassford v. Cook, 152 Colo. 136, 380 P.2d 907. Rescission was a remedy for misrepresentation concerning stock subscriptions in Colorado Industrial Loan and Investment Co. v. Clem, 82 Colo. 399, 260 P. 1019.
The judgment is reversed and the case remanded to the district court for further proceedings, not inconsistent with this opinion.
COYTE and PIERCE, JJ., concur.