(No. 46159.—

BARBARA M. TESCHNER, Appellant, v. CHICAGO TITLE AND TRUST COMPANY *et al.*, Appellees.

*Opinion filed Sept. 27, 1974.—Rehearing denied Jan. 28, 1975.*

Paul A. Teschner, of Teschner & Teschner, of Chicago, for appellant.

Gardner, Carton, Douglas, Chilgren & Waud, of Chicago (Joe A. Sutherland, George M. Covington, and William E. Deitrick, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

In April, 1971, Barbara M. Teschner filed a complaint in the circuit court of Cook County against Chicago Title and Trust Company, an Illinois corporation (hereafter Chicago Title), and Lincoln National Corporation, an Indiana corporation (Lincoln) which is the majority stockholder in Chicago Title. The complaint, *inter alia*, asked the court to restore the plaintiff's status as a shareholder in Chicago Title. The plaintiff also asked the court to declare a meeting held on February 24, 1971, by shareholders of Chicago Title illegal and invalid as a breach of fiduciary duty and as depriving her of property without due process of law, violating her right to equal protection of the laws and impairing her contract rights, all in violation of the constitutions of the United States and Illinois. The circuit court entered judgment for the defendants, and we have taken the plaintiff's appeal under

Supreme Court Rule 302(b). 50 Ill.2d R. 302.

In August, 1969, Lincoln made an exchange offer to shareholders of Chicago Title, offering one share of its preferred stock for each share of Chicago Title, $6 2/3 par value common stock. Chicago Title had 2,233,321 common shares outstanding. Lincoln National obtained 2,225,244 shares of Chicago Title stock through this exchange offer, leaving 8,077 shares or 3/10 of 1% of Chicago Title's stock it did not acquire. Chicago Title was delisted from the New York Stock Exchange, and there were some over-the-counter sales of the shares unacquired by Lincoln. In January of 1971 Lincoln purchased 6,187 of these remaining shares, owned by 50 stockholders, at $69.50 a share, which left 1,890 shares or less than 1/10 of 1% not acquired. The plaintiff, owning 63 shares in her name, refused to participate in either the exchange offer or this sale, but she and Wilma Woods Malmstone did accept the exchange offer as to 45 shares which were registered jointly in the names of Wilma Woods Malmstone and the plaintiff. There is no allegation in the plaintiff's complaint that the price which Lincoln offered for the shares was not a fair price or that the earlier exchange offer was inadequate or otherwise unfair.

At the regular meeting on January 27, 1971, the board of directors of Chicago Title adopted a resolution to amend its articles of incorporation. The amendment would authorize a reverse stock split by reclassifying Chicago Title's some 2,233,321 common shares into 3,722 shares each having a par value of $4,000. Thus, each share of a par value of $6 2/3 would be reclassified and changed into 1/600 of a share of the par value of $4,000. The plaintiff's 63 shares would be converted into 63/600 of a share of the par value of $4,000. The amendment also would provide that no stock certificates representing fractions of shares (or fractional shares) would be issued, but in lieu thereof the corporation (Chicago Title) would exercise its statutory option to acquire such fractional shares from the

shareholders for cash. The statutes relevant to the proposed amendment included the following provisions of the Business Corporation Act: "A corporation shall have power to purchase, take, receive, or otherwise acquire, *** its own shares ***. [A] corporation may purchase or otherwise acquire its own shares for the purpose of: (a) Eliminating fractional shares." (Ill. Rev. Stat. 1969, ch. 32, par. 157.6.) "A corporation may, but shall not be obliged to, issue a certificate for a fractional share, and, by action of its board of directors, may in lieu thereof, pay cash equal to the value of said fractional share ***." (Ill. Rev. Stat. 1969, ch. 32, par. 157.22.) "A corporation may amend its articles of incorporation" (Ill. Rev. Stat. 1969, ch. 32, par. 157.52), and a corporation may "Exchange, classify, reclassify, or cancel all or any part of its shares, whether issued or unissued" (Ill. Rev. Stat. 1969, ch. 32, par. 157.52—7).

A special meeting was held on February 24, 1971, to consider the proposed amendment, and the amendment was approved with 2,231,431 votes cast for it and 63 votes cast against it. The plaintiff cast the 63 votes against the proposed amendment; Lincoln cast the votes in its favor.

The articles of amendment were filed with the Secretary of State on February 24, 1971. On February 25, 1971, a letter was addressed by Chicago Title to the 45 holders, including the plaintiff, of the remaining 1,890 shares of Chicago Title not acquired by Lincoln, explaining the stock reclassification and stating that no fractional shares had been or would be issued as a result of the amendment. The letter advised that $69.50 would be paid for each 1/600 of a share as reclassified and described the manner of payment. These 1,890 shares were held principally by "lost" stockholders and small estates. The plaintiff is the only dissenting shareholder.

On July 1, 1971, Chicago Title transferred its title-insurance operation, including its employees, buildings and other assets, to a subsidiary, Chicago Title Insurance

Company.

At common law the unanimous consent of the stockholders of a corporation was required to make fundamental changes in the corporation. To provide needed flexibility and to remove what was in effect a power of veto held by a dissenting minority, legislatures authorized the making of corporate changes by majority vote. To afford a measure of protection to a dissenting minority, most jurisdictions, including Illinois (Ill. Rev. Stat. 1969, ch. 32, par. 157.73), enacted statutes giving dissenters the right to receive the cash value of their stock and providing for an appraisal of the stock where an agreement as to its value could not be reached. (13 W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 5906.1 (perm. ed. rev. vol. 1970) (hereafter Fletcher).) It can be said in general that unless there is fraud which would entitle dissenting shareholders to other relief, interests of minority shareholders can be terminated. (H. Henn, Handbook of the Law of Corporations and Other Business Enterprises sec. 240 (2d ed. 1970); 13 Fletcher sec. 5813; see *Opelka v. Quincy Memorial Bridge Co.,* 335 Ill. App. 402; *Robb v. Eastgate Hotel, Inc.,* 347 Ill. App. 261.) For a specific example, a majority of jurisdictions, among them Illinois (Ill. Rev. Stat. 1973, ch. 32, par. 157.66(a)), provide for short-mergers. A purpose of the statutes authorizing them is to provide the parent corporation with a means of eliminating the minority shareholders' interests in the subsidiary. The statutes in effect allow the termination of the minority shareholders' interests by the payment of cash for the minority's shares. (15 Fletcher sec. 7046.1 (perm. ed. rev. vol. 1973).) Corporate structural changes which have operated to remove the interest of minority shareholders have been held not to violate due process and equal protection of the law. Such holdings include: *Hottenstein v. York Ice Machinery Corp.* (3d Cir. 1943), 136 F.2d 944, 950, *cert. denied* (1945), 325 U.S. 886, 89 L. Ed. 2000; *Willcox v. Stern* (1966), 18

N.Y.2d 195, 201-202, 219 N.E.2d 401, 404; *Beloff v. Consolidated Edison Co.* (1949), 300 N.Y. 11, 19, 87 N.E.2d 561, 564; *Coyne v. Park & Tilford Distillers Corp.* (Del. 1959), 154 A.2d 893; and *Krafcisin v. LaSalle Madison Hotel Co.* (N.D. Ill. 1972), CCH Fed. Sec. L. Rep. par. 93,586 (1972-1973). (See 15 Fletcher secs. 7049, 7056, 7157; Ballantine on Corporations secs. 277, 278, 290, 298 (rev. ed. 1946).) However, some courts and some commentators have concluded that a majority should not be able to "freeze out" minority shareholders in the absence of a valid business purpose underlying the action which terminates or "freezes out" the minority. Vorenberg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right,* 77 Harv. L. Rev. 1189 (1964); see also Comment, *Recent Developments in the Law of Corporate Freeze-Outs,* 14 B.C. Ind. & Com. L. Rev. 1252 (1973); Note, *Minority Share Interest by Merger: A Dissent,* 54 Nw. U.L. Rev. 629 (1959); Note, *Freezing Out Minority Shareholders*, 74 Harv. L. Rev. 1630 (1961).

Turning to the case here, the defendants proceeded under the provisions of the Business Corporation Act, and, considering the record, we judge that the circuit court properly entered judgment for them. We do not say that under all circumstances minority shareholders will be denied relief when the majority has proceeded under the provisions of the Act, but we do not consider that the plaintiff here has shown grounds for the relief she seeks.

A corporation's articles of incorporation are a contract with three aspects. This court in *Bowman v. Armour and Co.,* 17 Ill.2d 43, 47, observed:

> "The charter or articles of incorporation of an Illinois corporation is a contract of a three-fold nature. It is operative as between the corporation and the State and it creates rights and duties as between the corporation and its shareholders, as well as between the shareholders themselves. (*Western Foundry Co. v. Wicker,* 403 Ill. 260.)

The express nature of the contract is not limited to the specific language found in the articles of incorporation but the contract in its entirety includes the statutory provisions in force when the charter is granted as though those statutory provisions were literally recited in the contract. (*Kreicker v. Naylor Pipe Co.*, 374 Ill. 364; *Tennant v. Epstein*, 356 Ill. 26.) The holders of the prior stock thus held rights and privileges as expressed in the articles prior to the amendment subject at all times to variation, modification or change to the extent that the articles could be amended from time to time as authorized by the Business Corporation Act."

Here the contract relationship between the plaintiff and Chicago Title included the Illinois Business Corporation Act and the articles of incorporation of Chicago Title. The Business Corporation Act authorized Chicago Title to amend its articles, acquire its own shares and reclassify stocks for the purpose of eliminating fractional shares. The Act did not require that Chicago Title issue certificates for the fractional shares but gave it the authority to pay cash for the shares in lieu of issuing certificates. These statutory provisions existed at the time the plaintiff acquired her shares, and there was no unconstitutional impairment of contractual rights. (*Mayfield v. Alton Railway, Gas & Electric Co.*, 198 Ill. 528, 536; *Chmelik v. Vana*, 31 Ill.2d 272; see also *Wright v. Minnesota Mutual Life Insurance Co.*, 193 U.S. 657, 48 L. Ed. 832.) Nor was there, we consider, a denial of due process or equal protection of the laws. (*Hottenstein v. York Ice Machinery Corp.* (3d Cir. 1943), 136 F.2d 944, 950, *cert. denied* (1945), 325 U.S. 886, 89 L. Ed. 2000; *Coyne v. Park & Tilford Distillers Corp.* (Del. 1959), 154 A.2d 893; see 15 Fletcher secs. 7049, 7056, 7157.) The plaintiff's complaint made no claim of fraud or deceptive conduct by the defendants. It did not charge that the exchange offer was unfair or that

the price later offered for the shares was inadequate. The defendants stated in the circuit court that the corporate action of reclassifying stock and eliminating fractional shares was basically to reduce corporate expenses and simplify and facilitate procedures. The plaintiff did not allege or show any improper purpose on the part of the defendants. Considering the circumstances the judgment in favor of the defendants was proper.

In view of the disposition we make, we need not consider the defendants' contention that *laches* barred the plaintiff from securing the relief she sought.

For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*