Ray ZAUBER—Derivatively in Behalf of Murray Savings Association, Appellant,

v.

MURRAY SAVINGS ASSOCIATION, Murray Development Company et al., Appellees.

No. 20082.

Court of Civil Appeals of Texas, Dallas.

Nov. 26, 1979.

Rehearing Denied Jan. 8, 1980.

---

Dean Carlton, Dallas, for appellant.

Morris I. Jaffe, Gardere, Wynne, Jaffe & DeHay, Dallas, for appellees.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

Appellant, Ray Zauber, brought this derivative action on behalf of Murray Savings Association seeking an accounting for and recovery of assets allegedly converted from Murray Savings to the use and benefit of the appellees as insiders. In the trial court appellees contended that appellant did not meet the standing requirements to bring a derivative suit for the following reasons: he had not complied with the class action requirements in rule 42 of the Texas Rules of Civil Procedure; he had not complied with the demand requirements of article 5.14(B)(2)(b) of the Texas Business Corporation Act; and he had ceased to be a stockholder during the pendency of this suit. Additionally, appellees contended that appellant was bound by Murray Savings' board of directors' decision, after commencement of the suit, that Murray Savings should not pursue this action. The trial court, after setting forth its findings of fact and conclusions of law, rendered summary judgment and dismissed the action. On this appeal appellant argues that genuine issues of material fact exist on each of appellees' points and thus, summary judgment was improperly granted and the cause should not have been dismissed. We agree that questions of fact were presented

to the trial court and therefore, that summary judgment was improperly granted. Accordingly, we reverse and remand for trial.

The summary judgment evidence was extensive and established the following facts. Murray Savings is a subsidiary of appellee Murray Financial Corporation, which also owns appellees Murray Development Company and Murray Properties Company. Murray Development and Murray Properties do the bulk of the land purchasing and development for this group of companies. Appellee Jack Crozier is a stockholder in and president of Murray Financial, and appellee Fulton Murray, Jr., is a stockholder in Murray Financial (both individually and as a trustee) and also chairman of the board and chief executive officer. These individual appellees are also on the board of directors of Murray Savings.

In 1976 Murray Savings was experiencing rapid growth in its deposits, and, because of industry regulations, it was required to keep earnings in line with this increasing capital. One means to accomplish this was to acquire some of the profitable land development projects being formulated by Murray Properties and Murray Development. Murray Properties and Murray Development thereafter notified Murray Savings of potentially profitable projects they had been investigating which Murray Savings might be interested in purchasing. An informal understanding existed between these companies that if Murray Savings decided not to purchase any of the properties, it would transfer them to Murray Properties or Murray Development. No charge was to be made to Murray Savings for the groundwork done by Murray Properties or Murray Development, and conversely, only costs incurred were to be paid to Murray Savings if any of the properties were transferred to Murray Properties or Murray Development.

Accordingly, during the summer of 1976 contracts for purchase on several properties were executed by Murray Savings. In the fall of that year, Murray Savings determined that, due to savings and loan regulations, it could not keep all of these properties, and thus, the board of directors of Murray Savings authorized the transfer to Murray Properties and Murray Development of Murray Savings' interest in the contract of purchase on one of the properties. When Murray Savings' management executed the conveyance, however, the parties receiving interests included not only Murray Properties and Murray Development, but also Crozier, Fulton Murray individually, and Fulton Murray as trustee.

Subsequently, appellant, as a stockholder of Murray Savings, brought this derivative suit alleging that the appellees had entered into a scheme to convert assets and opportunities of Murray Savings to their own benefit. At the time of the alleged wrongful transaction and at the time this suit was filed, the stock of Murray Savings was held by Murray Financial (99,972 shares), appellant Zauber (6 shares), and another individual (22 shares). After this suit was filed, Murray Financial purchased the twenty-two share block. Shortly thereafter, a shareholders' meeting was held at which the stockholders authorized a reverse stock split whereby one share of stock was to be issued to replace each ten shares previously held. Appellant had been duly notified of this meeting, but did not attend. As a result of this reverse stock split, appellant ended up with less than one share of stock and, under the amended by-laws of Murray Savings, appellant was issued cash for his fractional share. Appellant refused to accept the tendered cash payment.

## Trial Court's Order

In considering a motion for summary judgment, a trial court must view the evidence submitted and determine whether it establishes as a matter of law that no genuine issue of fact exists as to one or more of the essential elements of the cause of action. In reviewing a summary judgment proceeding, the appellate court should view

the same evidence and employ the same standard as the trial court. *Farley v. Prudential Insurance Co.*, 480 S.W.2d 176, 178 (Tex.1972); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Our review, therefore, is strictly limited to the question of whether a fact issue is presented by the motion for summary judgment.

Appellee's motion for summary judgment, in addition to other grounds, challenged appellant's standing to maintain this suit and requested dismissal. The trial court's order granted summary judgment and dismissal. A reading of the order reveals that the trial judge granted summary judgment based solely upon the contention that appellant lacked standing to maintain this action. If the motion for summary judgment establishes that appellant lacked standing, dismissal was proper. *Alexander v. City of Greenville*, 585 S.W.2d 333, 334 (Tex.Civ.App.—Dallas 1979, no writ). We note, however, that findings of fact and conclusions of law, which are inconsistent with and inappropriate in summary judgment proceedings, were included in the order by the trial court. *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966); *Gallop v. Seagoville Investments, Inc.*, 417 S.W.2d 727, 729 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). Such findings indicate that questions of fact existed which the court, acting as a fact finder, resolved. As is pointed out in the following discussion, we find that fact questions do exist. Consequently, we reverse the summary judgment and remand for further proceedings.

While many of the questions improperly resolved by the trial court are made irrelevant by our discussion below, those raised in the latter part of this opinion by our conclusions on the pertinent questions of law, should be submitted, on remand, to the trier of fact. It is apparent from the findings included in the trial judge's order that several questions of law will likely arise on remand that necessitate our consideration. Little case law exists concerning the proper procedure for instituting and proceeding with a derivative suit in Texas. Consequently, in construing Texas law, we have analyzed the reasoning in federal and other state court decisions to assist in interpreting the statutory law of Texas regarding this type of action.

### Applicability of Rule 42

■ The trial court, apparently under the mistaken impression that Texas law requires a plaintiff in a derivative suit to comply with the requirements of a class action under Texas Rule of Civil Procedure 42, held that because of appellant's failure to comply with that rule he was not entitled to bring this suit. Prior to its amendment in 1977, rule 42 specifically provided as a prerequisite to instituting a derivative suit that the plaintiff be one who would "fairly insure the adequate representation" of the entire class. Tex.R.Civ.P. 42(a) (1941). In construing that rule the court in *Ford v. Bimbo Corp.*, 512 S.W.2d 793 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ), held that all derivative suits are necessarily brought on behalf of all shareholders even if only one shareholder actually institutes the suit. *Id.* at 795. This reasoning would require a party instituting a derivative suit to comply with class action prerequisites regardless of whether those prerequisites specifically referred to derivative actions. *Bimbo*, however, must be read in light of the then existing rules. Since rule 42, prior to its being amended, expressly provided for derivative suits, *see* Tex.R.Civ.P. 42 (1941), the court in *Bimbo* was constrained to apply it.

When the Texas Supreme Court revised this rule, however, reference to derivative actions was deleted. Instead, the new rule was modeled on the federal class action rule which does not control derivative suits. *See* Tex.R.Civ.P. 42, Comment. In light of the change in this rule, the supreme court clearly intended rule 42 to govern only class actions; derivative actions brought in the right of a corporation are governed solely by article 5.14 of the Texas Business Corpo-

ration Act. Consequently, appellant's failure to comply with rule 42 is immaterial to his maintenance of this suit. We turn now to the requirements of article 5.14(B) of the Texas Business Corporation Act, which controls derivative suits.

### Demand Requirement

■ Article 5.14(B) of the Texas Business Corporation Act establishes prerequisites for filing a derivative suit in Texas. It provides as follows:

B. Prerequisites. A derivative suit may be brought in this State only if:

(1) The plaintiff was a record or beneficial owner of shares . . . at the time of the transaction of which he complains . . ., and

(2) The initial pleading in the suit states:

(a) The ownership required by Subsection (1), and

(b) With particularity, the efforts of the plaintiff to have suit brought for the corporation by the board of directors, or the reasons for not making any such efforts.

Tex.Bus.Corp.Act Ann. art. 5.14(B) (Vernon Supp.1978–1979). One of the enumerated prerequisites to bringing a derivative suit is that the plaintiff must state in his pleading that he has made efforts to have the board of directors bring suit for the corporation. *Id.* art. 5.14(B)(2)(b). If no such efforts have been made, he must state the reasons for not making them. Neither party dis-

putes the fact that appellant made no demand on Murray Savings' board of directors that such a suit be brought. Dispute does arise, however, concerning whether appellant had sufficient reason for failing to make demand, and if so, whether he stated those reasons with sufficient particularity.

The reason for requiring a shareholder to make demand on the corporation's directors prior to instituting a derivative suit is that the cause of action belongs to the corporation. Consequently, the corporation, through its board of directors, should determine whether the chances for a successful suit, the costs of maintaining a suit, and other factors militate in favor of instituting such an action.[1] *Cates v. Sparkman*, 73 Tex. 619, 620, 11 S.W. 846, 848 (1889); 7 W. Dorsaneo & P. Winship, Texas Litigation Guide § 162.06[2] (1978); *accord, Gall v. Exxon Corp.*, 418 F.Supp. 508, 514 n.13, 515 (S.D.N.Y.1976). Only when it can be shown that something beyond unsound business judgment has been exercised by the board of directors, resulting in a wrongful refusal to act, will a shareholder be allowed to institute the suit on behalf of the corporation. *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263–64, 37 S.Ct. 509, 510, 61 L.Ed. 1119, 1124 (1917); *Cates v. Sparkman*, 73 Tex. at 621, 11 S.W. at 848–49; *Governing Board v. Pannill*, 561 S.W.2d 517, 524 (Tex.Civ.App. —Texarkana 1977, writ ref'd n. r. e.). *See generally* Comment, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L.Rev. 168, 169–74 (1976).

---

1. Significant similarities exist between the federal rule of civil procedure governing derivative suits and article 5.14, with respect to stock ownership at the time of the transaction and with respect to the demand requirement. Cases construing the federal rule have been included, therefore, as persuasive authority. *See Blackmon v. Hansen*, 140 Tex. 536, 540, 169 S.W.2d 962, 964 (1943).

The Federal rule provides in pertinent part: [i]n a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association

having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains . . . . The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. . . .

Fed.R.Civ.P. 23.1.

Nevertheless, demand upon the board of directors need not be made when it can be shown that such demand would be futile. *Hawes v. Contra Costa Water Co.,* 104 U.S. 450, 461, 26 L.Ed. 827, 832 (1882); *Cates v. Sparkman,* 73 Tex. at 621, 11 S.W. at 849; *Stinnett v. Paramount-Famous Lasky Corp.,* 37 S.W.2d 145, 150 (Tex.Com.App. 1931, holding approved). Thus, when a defendant parent corporation was shown to control the majority of the subsidiaries shares, and thereby the board of directors, no demand was required. *Hyams v. Calumet & Hecla Mining Co.,* 221 F. 529, 538 (6th Cir. 1915); *In re Penn Central Securities Litigation,* 367 F.Supp. 1158, 1164–65 (E.D.Pa.1973); *see Craftsman Finance & Mortgage Co. v. Brown,* 64 F.Supp. 168, 174–75 (S.D.N.Y.1945). But when some, although not a majority, of the directors had participated in the alleged wrongdoing, demand was not excused. *Abrams v. Mayflower Investors, Inc.,* 62 F.R.D. 361, 368 (N.D.Ill.1974); *see Swanson v. Traer,* 249 F.2d 854, 858–59 (7th Cir.), *rev'd on other grounds,* 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957). The fundamental inquiry is whether the directors have such a personal interest in the controversy or are so controlled by the alleged wrongdoers that they could not reasonably be expected to diligently pursue the action. *See Stinnett v. Paramount-Famous Lasky Corp.,* 37 S.W.2d at 150. Whether defendants control the board of directors or demand would otherwise be futile is, therefore, a question to be determined only after examining the factual situation. The summary judgment evidence in this case shows that some of the outside directors of Murray Savings felt they could vote in the manner they thought proper, without undue influence from appellees. Nonetheless, this evidence is insufficient to fulfill appellees' burden of establishing that no fact question exists as to appellees' control over a majority of the board of directors. Appellee also points out that a new board of directors was elected just prior to the filing of this lawsuit, that the majority of those directors were not connected with the transfer in question, and that appellant did not make demand on this new board of directors. The election of a new board of directors, however, does not of itself establish as a matter of law that appellee did not control this board. We conclude that a genuine issue of fact exists as to appellees' control of the board of directors and thus, as to appellant's standing to maintain this suit.

*Shareholder Status Requirement*

The requirement in article 5.14(B) that in order to bring a derivative suit a plaintiff must have been a shareholder at the time of the wrongful transaction, is only a minimum requirement. The federal rule governing derivative suits, which contains similar requirements to article 5.14(B),[2] has been construed to include a further requirement that shareholder status be maintained throughout the suit. *See Tryforos v. Icarian Development Co.,* 518 F.2d 1258, 1261, 1263 (7th Cir. 1975), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); *cf. Bacon v. National Bank of Commerce,* 259 S.W. 244, 246–47 (Tex.Civ.App.—Fort Worth 1924, writ dism'd) (approving requirement that plaintiff be stockholder when suit initiated). The reasoning behind allowing a shareholder to maintain a suit in the name of the corporation when those in control wrongfully refuse to maintain it is that a shareholder has a proprietary interest in the corporation. Therefore, when a shareholder sues, he is protecting his own interests as well as those of the corporation. If a shareholder voluntarily disposes of his shares after instituting a derivative action, he necessarily destroys the technical foundation of his right to maintain the action. *See Tenney v. Rosenthal,* 6 N.Y.2d 204, 189 N.Y.S.2d 158, 163, 160 N.E.2d 463, 466–67 (1959). If, on the other hand, a shareholder's status is involuntarily destroyed, a court of equity must determine whether the status was destroyed without a valid busi-

---

**2.** See text of Federal Rule of Civil Procedure 23.1 in note 1 *supra.*

ness purpose; for example, was the action taken merely to defeat the plaintiff's standing to maintain the suit? *See Teschner v. Chicago Title & Trust Co.*, 59 Ill.2d 452, 322 N.E.2d 54, 57 (Ill.1974), *appeal dismissed*, 422 U.S. 1002, 95 S.Ct. 2623, 45 L.Ed.2d 666 (1975). *See also* Dykstra, *The Reverse Stock Split—That Other Means of Going Private*, 53 Chi.–Kent L.Rev. 1 (1976). *Teschner* concerned an alleged "freeze-out" of minority stockholders through a reverse stock split similar to that employed by Murray Savings. The Illinois court stated that generally interests of minority stockholders may be terminated by corporate action; however, if fraudulent, deceptive or improper conduct underlies that action a court may declare it invalid. *Teschner v. Chicago Title & Trust Co.*, 322 N.E.2d at 56–58. In *Teschner* the reverse stock split was upheld because the former stockholders did not plead or prove any of these exceptions to the general rule, and because the corporation introduced evidence of a valid business purpose for the reverse stock split. *Id.* at 57–58.

If no valid business purpose exists, a court of equity will consider the destruction of a stockholder's status a nullity and allow him to proceed with the suit in the name of the corporation. Therefore, on remand of this suit, a finding that appellant has failed to maintain his status as shareholder is dependent upon findings that the disposition of the stock was voluntary or, though involuntary, that the corporation's termination proceeding was instituted to accomplish a valid business purpose, rather than to dispose of the derivative suit by a reverse stock split.

### Board of Director's Action

■ Approximately eleven months after this suit was filed, Murray Savings' board of directors, on their own initiative, voted not to pursue this action, but rather to obtain its dismissal. In their motion for summary judgment, appellees contended that appellant was bound by this decision of the board of directors. This contention was based on the argument that a board of directors should be able to exercise its good faith business judgment in determining whether to pursue a previously filed derivative action; otherwise, any stockholder could file such a suit and completely ignore the demand requirements of article 5.14. We cannot agree with appellees' contention because the demand requirements of article 5.14 can be avoided only if one complies with that article's alternative requirement.

As previously pointed out, an alternative requirement for maintenance of a derivative suit exists in article 5.14 if no demand was made on a corporation's board of directors. In such a case, the plaintiff must state with particularity the reasons he did not make demand on the directors. Tex. Bus.Corp.Act Ann. art. 5.14(B)(2)(b) (Vernon Supp. 1978–1979). This requirement is not merely an informal procedural step, but rather a requirement necessitating proof at trial. *Ash v. International Business Machines, Inc.*, 353 F.2d 491, 493 (3d Cir. 1965), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); *Barthold v. Thomas*, 210 S.W. 506, 507–08 (Tex. Com.App.1919, holding approved). Thus, a pleading in general terms is not sufficient; specific facts must be alleged indicating the futility of making demand. *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 264 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). If the pleadings do not include specific facts and particularized reasons for failing to make demand, the case is subject to being dismissed upon proper exception and after opportunity to amend. Indeed, if this requirement of particularity were not strictly enforced, the demand requirement would become meaningless, as appellee argues. Because we hold that strict enforcement of the particularity provision in article 5.14 is mandatory, the argument upon which appellees' contention is based is without merit. Additionally, if appellees' contention were true, the alternative requirement in article 5.14 would be meaningless.

In light of our holding, this action by the board of directors, after suit was filed, is

not relevant to appellant's right to maintain the suit. All parties are bound by appellant's decision not to make demand. Thus, if the facts indicate that demand was required, appellant will not be able to further maintain this action. If, on the other hand, the facts indicate that demand was not required, appellant may maintain this action despite this action of the board of directors.

*Conclusion*

Since we hold that genuine issues of fact were presented to the trial court, we reverse the summary judgment and remand for further proceedings, consistent with this opinion.