Sophie **GOLDMAN** and John T. **Maley,** Plaintiffs–Appellants,

v.

**UNION BANK AND TRUST,** a Colorado State Banking Institution, and its Board of Directors, Defendants–Appellees.

No. 87CA0326.

Colorado Court of Appeals, Div. IV.

Aug. 25, 1988.

Rehearing Denied Sept. 15, 1988.

Certiorari Denied Dec. 19, 1988.

Robert A. Schiff, Denver, for plaintiffs-appellants.

Cogswell and Wehrle, William J. McCarren, Denver, for defendants-appellees.

NEY, Judge.

Plaintiffs, Sophie Goldman and John T. Maley, appeal from the summary judgment entered dismissing their complaint for injunctive relief. We affirm.

The questions presented for review are (1) whether a reverse stock split which has the effect of "freezing out" minority shareholders is authorized under the Colorado Corporation Code and (2), if it is, whether § 7–4–109, C.R.S. (1986 Repl.Vol. 3A) is unconstitutional as applied. We conclude that the answer to the first question is yes and the answer to the second question is no.

Plaintiffs were minority shareholders of defendant Union Bank and Trust (UNB). In 1986, UNB proposed to reclassify its outstanding shares by declaring a one for 500 reverse stock split, without changing the number or par value of the authorized shares, and without decreasing stated capital. Shareholders who held less than 500 shares before the reverse stock split would receive a fractional part of one share. UNB then proposed, pursuant to § 7–4–109, C.R.S. (1986 Repl.Vol. 3A), to pay in cash the fair value of all fractional shares and thereafter to cancel those shares. The reverse stock split and subsequent payment of cash in lieu of issuing fractional shares would eliminate all shareholders except a corporation which owned 98% of the outstanding stock before the reverse stock split.

UNB's proposal was embodied in a resolution that was presented to the shareholders at the 1986 annual meeting. The shareholders passed the resolution, with only plaintiff Maley voting against it. Mrs. Goldman authorized her son to vote against the resolution on her behalf, but his vote was not counted because he did not have a written proxy to vote her shares.

Plaintiffs filed this suit asking the court to declare the actions taken by UNB to be void, and to enjoin the cancellation of plaintiffs' shares. The parties filed cross-motions for summary judgment. The trial court granted UNB's motion, holding that its actions were authorized by the Colorado corporation statutes and that those statutes are not unconstitutional.

I.

Plaintiffs first contend that the court erred in granting summary judgment and

finding UNB's actions were authorized under the Colorado Corporation Code as a matter of law. We disagree.

■ Under the Colorado Corporation Code, a corporation has the right to "purchase, take, receive, or otherwise acquire, hold, own, pledge, transfer, or otherwise dispose of its own shares...." Section 7–3–102(1), C.R.S. (1986 Repl.Vol. 3A). A corporation is specifically authorized to purchase or otherwise acquire its own shares for the purpose of eliminating fractional shares. Section 7–3–102(3)(a), C.R.S. (1986 Repl.Vol. 3A). A corporation faced with the possibility of issuing fractional shares may, *inter alia*, issue the fractional shares or pay in cash the fair value of the fractional shares as of the time those entitled to receive the fractional shares are determined. Section 7–4–109, C.R.S. (1986 Repl.Vol. 3A). We conclude that, taken together, these statutes authorize the corporate action in this case.

Other courts which have considered similar corporate actions under similar corporate statutes have arrived at the same conclusion. In *Teschner v. Chicago Title & Trust Co.*, 59 Ill.2d 452, 322 N.E.2d 54 (1974), *appeal dismissed*, 422 U.S. 1002, 95 S.Ct. 2623, 45 L.Ed.2d 666 (1975), the court concluded that the Illinois Business Corporation Act authorized a one to 600 reverse stock split and subsequent payment of cash in lieu of issuing fractional shares, which eliminated all minority shareholders in Chicago Title. The Illinois Business Corporation Act is based on the Model Business Corporation Act, as is the Colorado Corporation Code. *See Pioneer Bancorporation, Inc. v. Waters*, 765 P.2d 597 (Colo. App.1988).

The court in *Teschner* gave the following rationale for its conclusion:

"At common law the unanimous consent of the stockholders of a corporation was required to make fundamental changes in the corporation. To provide needed flexibility and to remove what was in effect a power of veto held by a dissenting minority, legislatures authorized the making of corporate changes by majority vote.... It can be said in general that

unless there is fraud which would entitle dissenting shareholders to other relief, interests of minority shareholders can be terminated."

In light of the statutes and the *Teschner* analysis, we conclude that the trial court did not err in determining that the UNB's actions here were authorized under the Colorado Corporation Code.

II.

■ Plaintiffs argue, for the first time on appeal, that UNB's actions here were invalid because there was no legitimate business purpose for those actions. Generally, courts which have considered the question have required a showing of a valid business purpose under these circumstances. *See Lerner v. Lerner*, 306 Md. 771, 511 A.2d 501 (1986); *see also Teschner v. Chicago Title & Trust Co.*, *supra; Leader v. Hycor, Inc.*, 395 Mass. 215, 479 N.E.2d 173 (1985). However, the presence or absence of a valid business purpose is a question of fact which cannot be considered for the first time on appeal. *See Wickland v. Snyder*, 39 Colo.App. 403, 565 P.2d 976 (1977).

III.

■ Plaintiffs also are apparently challenging the consideration paid for the fractional shares. However, they did not allege any facts tending to show that the consideration was inadequate, but merely stated in their reply brief for summary judgment that the price was based on a mathematical formula. A genuine issue precluding summary judgment cannot be raised by counsel simply by means of argument. *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970). It was for plaintiffs to demonstrate by specific factual allegations that a real controversy existed concerning the fair value of the fractional shares. *See Sullivan v. Davis, supra.* This they failed to do.

IV.

We also find no merit in plaintiffs' arguments concerning the corporation's stated

capital. Contrary to their assertion, because of a transfer from paid in surplus pursuant to § 7–6–101(4), C.R.S. (1986 Repl.Vol. 3A), UNB's stated capital was not reduced. *See also* § 7–1–102(13), C.R.S. (1986 Repl.Vol. 3A).

## V.

Plaintiffs also contend that if UNB's actions are authorized under the Colorado Corporation Code, then § 7–4–109, C.R.S. (1986 Repl.Vol. 3A) is unconstitutional as applied to the circumstances of this case. Specifically, plaintiffs argue that § 7–4–109 as thus applied violates the Fourteenth Amendment as well as the contracts clause and private takings clause of the Colorado Constitution. *See* Colo. Const. art. II, §§ 11 and 14. We disagree.

■ The contractual relationship of stockholders to a corporation is governed by its charter. *Hampton v. Tri–State Finance Corp.*, 30 Colo.App. 420, 495 P.2d 566 (1972). The general incorporation law forms an essential part of the corporate charter, and all parties are bound by its terms, regardless of whether such terms are copied in the charter. *Hampton v. Tri–State Finance Corp., supra.*

■ Here, the contract between plaintiffs and UNB included the provisions of the Colorado Corporation Code. The corporation code authorizes UNB to acquire its own shares and to pay cash to eliminate fractional shares. These statutory provisions existed at the time UNB was formed. Thus, there was no unconstitutional impairment of plaintiffs' contractual rights. *See Teschner v. Chicago Title & Trust Co., supra.*

■ By the same analysis, we conclude that the constitutional provision prohibiting the non-consensual taking of private property for private use is inapplicable to the parties' relationship here. Since UNB's actions were authorized by the corporation code which was embodied in the corporation's articles of incorporation, the plaintiffs are deemed to have consented to the operation of the statutory provisions.

■ Finally, we perceive no denial of due process or of equal protection of the laws under these circumstances. *See Teschner v. Chicago Title & Trust Co., supra.*

The judgment is affirmed.

BABCOCK and HUME, JJ., concur.